DECISION AND JUDGMENT ENTRY
{¶ 1} John Dicken appeals the judgment of the Athens County Municipal Court finding him guilty of tandem axle overload, a violation of R.C. 5577.04(B)(2). Dicken claims that the trial court erred when it denied his motion to suppress since Trooper Mendenhall did not have a reasonable articulable suspicion to justify a stop of his truck. He argues the trooper only caught a glimpse of the truck and could only "guess" that the truck was overloaded. Therefore, he contends that the court should have suppressed evidence of the weight of the truck. The state points out that Trooper Mendenhall observed "rip rap" stone piled above the sideboards of the truck, which led him to reasonably surmise that the truck was overloaded. Because Trooper Mendenhall's observations and experience allowed him to form a reasonable and articulable suspicion that the truck might be overloaded, we affirm the judgment of the trial court.
 {¶ 2} Trooper Jeremy Mendenhall of the Ohio State Highway Patrol was parked at a rest area on State Route 32, near Albany, Ohio. He had just stopped a dump truck due to a possible overload and was in the process of inspecting and weighing that truck, when he dropped a piece of paper. As he bent down to pick up the paper, Trooper Mendenhall observed appellant's truck traveling eastbound on State Route 32. He observed the truck for about one half to one second, during which he saw "rip rap" stone piled above the sideboards of the truck, indicating a possible overload. Dicken's truck was similar to the one that Trooper Mendenhall was in the process of inspecting.[1]
 {¶ 3} After stopping appellant, Trooper Mendenhall directed him to the rest area in order to weigh the truck. An inspector weighed the truck and found that it was in fact overloaded. Trooper Mendenhall charged appellant with a violation of R.C. 5577.04(B)(2), tandem axle overload.
 {¶ 4} Appellant filed a motion to suppress all the evidence obtained by Trooper Mendenhall after the stop of his truck based
 {¶ 5} upon a purported lack of reasonable articulable suspicion for the initial stop. The court conducted a hearing on the motion to suppress, and subsequently, denied the motion. Appellant then pled no contest to the charge. The court found him guilty and fined him $290. Appellant filed this timely notice of appeal, raising one assignment of error: THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO SUPPRESS EVIDENCE GARNERED AFTER APPELLANT WAS STOPPED, DETAINED AND HIS TRUCK INSPECTED AND WEIGHED BASED SOLELY ON SPECULATION THAT AN OBSCURED PORTION OF THE LOAD WAS TOO HEAVY.
 {¶ 6} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. State v. Brooks, 75 Ohio St.3d 148, 154,1996-Ohio-134, 661 N.E.2d 1030; State v. Mills
(1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Medcalf (1996),111 Ohio App.3d 142, 145, 675 N.E.2d 1268; State v. Harris (1994),98 Ohio App.3d 543, 546, 649 N.E.2d 7. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusions, whether they meet the applicable legal standard. State v. Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141.
 {¶ 7} The investigative stop exception to the Fourth Amendment requirement allows a police officer to stop an individual if the officer has a reasonable suspicion, based on specific and articulable facts, that criminal behavior has occurred or is imminent. Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889; State v. Andrews (1991),57 Ohio St.3d 86, 87, 565 N.E.2d 1271. To justify an investigatory stop, a police officer must be able to articulate specific facts which would warrant a person "of reasonable caution" to believe that the person stopped has committed or is about to commit a crime. Terry, supra, at 19-20; Dayton v. Erickson, 76 Ohio St.3d 3, 11-12, 1996-Ohio-431,665 N.E.2d 1091. The propriety of an investigative stop must be viewed in light of the totality of the surrounding circumstances. Id. at paragraph one of the syllabus; State v. Bobo (1988), 37 Ohio St.3d 177,524 N.E.2d 489, paragraph one of the syllabus.
 {¶ 8} R.C. 4513.33 provides: "Any police officer having reason to believe that the weight of a vehicle and its load is unlawful may require the driver of said vehicle to stop and submit to a weighing of it * * *."
 {¶ 9} The "reason to believe" standard set forth in R.C. 4513.33
is the functional equivalent of the "reasonable suspicion" standard inTerry. State v. Myers (1990), 63 Ohio App.3d 765, 770, 580 N.E.2d 61;State v. Elder (1989), 65 Ohio App.3d 463, 467, 584 N.E.2d 779.
 {¶ 10} At the suppression hearing, Trooper Mendenhall testified that he stopped appellant's vehicle because he saw "rip rap" stone heaping above the sideboards of the truck. He stated that he had observed other trucks overloaded with this same type of "rip rap" stone. Based on his knowledge and experience, Trooper Mendenhall indicated that "rip rap" stone is very heavy and that it does not take much of this type of stone to overload a truck. Trooper Mendenhall also testified that he had been with the weights and measures division of the patrol for about a year and, during that time, he has maintained about a 90-95% accuracy rate in stopping overloaded trucks.
 {¶ 11} Appellant contends that the brevity of Trooper Mendenhall's one half to one second observation of appellant's truck made it impossible for him to develop a reasonable suspicion for stopping appellant's truck. Moreover, appellant argues that mere speculation as to what is in the bed of the truck cannot lead to a reasonable articulable suspicion that the truck is overloaded. Appellant cites our decision inState v. Horsley (1999), Ross App. No. 98 CA 2423, for the proposition that an officer must be able to specifically articulate the difference between a legal weight truck and an overweight one. However, Horsley, supra, dealt with a much different situation. In that case, the officer pulled Horsley over for "bulging tires." At the suppression hearing, the officer could not adequately describe the tire bulges or how Horsley's tires differed from a normal truck tire. In addition, the officer did not observe the load in the truck, as was the case here. The facts inHorsley, supra, are distinguishable from the facts here.
 {¶ 12} The test for reasonableness is perhaps imprecise, but focusing upon the totality of the circumstances, an officer only need have a particularized and objective basis for suspecting the detained person of criminal activity. United States v. Cortez (1981), 449 U.S. 411. Thus the question is whether an officer "could reasonably surmise that the particular vehicle they stopped was engaged in criminal activity."Id. (Emphasis added.) Surmise means to "form a notion on slight proof." See 3 LaFave, Search and Seizure (1978), Section 9.3(a) at fn. 17, citingCortez and Webster's Third New International Dictionary (1961) 2301. A minimal or abbreviated opportunity for observation is not a per se bar to forming a reasonable suspicion. Rather, it is akin to a credibility determination that is best left to the trial court. If the trial court concludes that the trooper had time to see the stones piled above the truck bed, i.e., that this testimony was credible, we are not in a position to second guess that determination.
 {¶ 13} Appellant also contends that the potential existence of an innocent explanation for the presence of the stone, i.e., that it was only used to secure a lighter material, precludes the trooper from forming a reasonable suspicion of overloading. However, the possible existence of an innocent or legal reason for the observed conduct does not negate a reasonable suspicion. The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and to establish whether the activity is in fact, legal or illegal — to enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges. Id. citing UnitedStates v. Gomez (C.A.5, 1985), 776 F.2d 542. Simply because certain conduct may be construed as consistent with innocent behavior does not mean that this conduct cannot form the basis for reasonable suspicion. Rather, the proper analysis focuses on whether there is a substantial possibility that criminal conduct has occurred, is occurring, or is about to incur. Id. at fn. 56.
 {¶ 14} We agree with the trial court that Trooper Mendenhall's brief observation, along with his experience, gave rise to a reasonable articulable suspicion that the truck was overloaded. The mere fact that "innocent behavior" might also explain the presence of "rip rap" over the side boards, i.e., it could be used to hold down a tarp covering lighter material, does not negate the fact that the trooper's belief was reasonable. Nor did the brief nature of his observation require him to conduct further investigation before stopping the appellant. The assignment of error is meritless.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Not Participating.
Evans, J.: Concurs in Judgment and Opinion.
[1] See State v. Osborne, Athens App. No. 02CA8, 2002-Ohio-5362, for the companion case, which involves a similar issue.